**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Jacquelin Wyatt, | ) | No. CV 07-562-PHX-JAT |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Mark W. Everson, Secretary of the Department of the Treasury, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Defendant Mark W. Everson, Secretary,[1] United States Department of the Treasury (hereinafter "Defendant" or "IRS") has moved for summary judgment (Doc. #45). The Court now rules on the motion.

## I.    BACKGROUND

Plaintiff Jacquelin Wyatt works for the Internal Revenue Service (the "IRS") as a revenue agent. (Defendant's Statement of Facts "DSOF," Doc. #46, ¶1). She began working for the IRS in 1983. (Plaintiff's Statement of Facts "PSOF," Doc. #50, ¶1). In 2003, Plaintiff voluntarily transferred to the Bank Secrecy Act Anti-Money Laundering ("BSA/AML") Group. (Doc. #46 ¶1).

---

[1] The Court notes that the current Secretary of the Department of the Treasury is Timothy F. Geithner. Neither party has moved to amend the case caption. The Court therefore continues to refer to the Defendant as Mark W. Everson.

1    Plaintiff alleges she applied for a Grade 12 promotion in Phoenix on December 28,

2  2004 and that she did not get the promotion because she is an African American woman.

3  (Compl., Doc. #1, ¶3.3).[2]  Plaintiff alleges that she again applied for a Grade 12 promotion

4  on February 8, 2005, which she did not receive.  (Doc. #1 ¶3.5).  She also allegedly applied

5  for a Grade 13 promotion, which she did not receive.  (Doc. #1 ¶3.5).

6    Plaintiff alleges that in March of 2005 she was told to clear her calendar because she

7  would be performing a National Compliance review.  (Doc. #1 ¶3.6).  Ultimately, however,

8  she did not get to perform the review, allegedly because she is an African American woman.

9  (Doc. #1 ¶3.6).

10    On April 22, 2005, Plaintiff's supervisor instructed her not to open any Grade 12 case

11  work.  (Doc. #1 ¶3.7).  Around that time, Plaintiff spoke with her upper level manager who

12  informed her that he had not received an evaluation for her, which allegedly hindered her

13  promotability.  (Doc. #1 ¶3.7).  Plaintiff alleges that as of April 22, 2005, her mid-year

14  evaluation was late and that, "This act was intentional in order to prevent promotion."  (Doc.

15  #1 ¶3.7).

16    Plaintiff alleges she applied for a Grade 13 promotion on July 8, 2005.  (Doc. #1

17  ¶3.8).  The vacancy announcement and position were cancelled or "non-selected" with no

18  reason given.  (Doc. #1 ¶3.8).

19    In August of 2005, Shirley Snider, Plaintiff's supervisor, reviewed eight of Plaintiff's

20  cases.  (Doc. #46 ¶4).  The review revealed serious deficiencies, including misrepresentation

21  of the time Plaintiff spent researching in the IRS's CBRS computer system.  (Doc. #46 ¶4).

22  Plaintiff also recorded five hours of time for a conversation that lasted only approximately

23  fifteen minutes.  (Doc. #46 ¶4).  Further, Plaintiff routinely claimed she had spent five to

24  eight hours performing "drive-bys" to locate and scout businesses less than twenty miles

25  _____

26    [2]The Court primarily cites to Plaintiff's Complaint rather than her statement of facts
   because Plaintiff's Separate Statement of Facts in Opposition to Summary Judgment consists
27  of only six paragraphs.

28                                         - 2 -

1   from her workplace.  (Doc. #46 ¶4).  The case reviews were discussed with Plaintiff on
2   August 20, 2005.  (Doc. #46 ¶4).

3       On August 26, 2005, Plaintiff received a memorandum with her mid-year evaluation.
4   (Doc. #46 ¶5).  She received a failing rating in a number of categories because of time
5   misrepresentation and case management issues discovered during the review of her cases.
6   (Doc. #46 ¶5).

7       Plaintiff alleges that she spoke with an EEO Counselor on August 29, 2005.  (Doc.
8   #1 ¶3.10).[3]  Plaintiff does not allege why she contacted the Counselor or what she proposed
9   to talk about with the Counselor.  Plaintiff learned on September 2, 2005 that Defendant was
10  pursuing a disciplinary issue against her.  (Doc. #1 ¶3.11).

11      Plaintiff contacted EEO Counselor Angelia G. Doyle on January 26, 2006.  (Doc. #46
12  Ex. A at pp. 11 & 14).  According to the EEO Investigative File, Plaintiff contacted the
13  Counselor because she had received notification via email that she would be issued her
14  annual appraisal and an Opportunity Letter.  (Doc. #46 Ex. A p. 14).  The EEO accepted the
15  following issues for investigation – whether Plaintiff was subjected to disparate treatment
16  and harassment based on her race and/or gender when: 1) Plaintiff rotated out of the
17  BSA/AML Group because her manager threatened (a) to place her on an Opportunity to
18  Improve Letter in August 2005 and January 2006; (b) to take disciplinary actions against her;
19  and (c) conducted unwarranted performance reviews; and (2) Plaintiff was denied a
20  developmental assignment on April 22, 2005 and on an ongoing basis.  ( Doc #46 Ex. A at
21  pp. 2 & 5).

22

23

24      [3]Defendant denied Plaintiff's allegation that she spoke with a counselor on that date
    in his Answer because he lacked sufficient information to admit or deny the allegation.
25  (Answer, Doc. #11, ¶3.10).  Plaintiff has not come forward with any evidence at the
    summary judgment stage to substantiate her allegation.  The file submitted by Defendant
26  shows that Plaintiff contacted an EEO Counselor on January 26, 2006.  (Doc. #46, Ex. A -
27  EEO Complaint at pp. 11 & 14).

28                              - 3 -

Plaintiff requested to be sent back to her previous assignment on January 25, 2006. (Doc. #1 ¶3.13).  On January 27, 2006, Plaintiff received an overall rating of "minimally successful" on her annual performance evaluation.  (Doc. #46 ¶6).

On February 16, 2006, Plaintiff filed a union grievance to dispute her annual performance evaluation.  (Doc. #46 ¶7).  She claimed she received negative ratings because of her race and/or gender.  (Doc. #46 Ex. D).  Plaintiff's Grievance Form states that her "Annual appraisal received on 1-27-06 was based on an untimely evaluation of the employee's work.  It was not made in a fair and objective manner . . . Race and/or sex may have been a negative factor in this case."  (Doc. #46 Ex. D).

On March 16, 2006, IRS Territory Manger Ted Armstrong issued a Notice of Proposed Disciplinary Action to Plaintiff in which he proposed a three-day suspension of Plaintiff.  (Doc. #46 ¶9).  The IRS received Plaintiff's EEO Complaint on March 23, 2006. (Doc. #46 ¶10).   The paperwork signed by Plaintiff acknowledges that she was advised that she could elect to proceed with her claims under the EEOC regulations or the union grievance procedure, but not both.  (Doc. #46 ¶10).  On November 2, 2006, Plaintiff attended a meeting relating to her annual appraisal grievance.  (Doc. #1 ¶3.19).

On November 20, 2006, Plaintiff entered into a settlement agreement with the IRS to resolve the time misrepresentation issues.  (Doc. #46 ¶11 & Ex. G). Pursuant to the terms of the Settlement Agreement, Plaintiff admitted that she misrepresented her CBRS time.  (Doc. #46 ¶11 & Ex. G).  Plaintiff agreed to accept a Letter of Reprimand for her acknowledged misconduct.  (Doc. #46 ¶11 & Ex. G).  Plaintiff further agreed to waive all rights to pursue any matters covered by the settlement agreement by any means, including, without limitation, through grievance procedures, EEO complaints, or federal complaints.  (Doc. #46 ¶11 & Ex. G).

Plaintiff filed this case on March 16, 2007.  Plaintiff alleges that she was given poor reviews, not promoted, and generally not treated well because of her race and/or gender.

1  Plaintiff further alleges that Defendant retaliated against her for complaining about her poor
2  treatment and violations of her rights under Title VII and her union contract.

3      **II.    ANALYSIS**

4      Legal Standard

5
6      Summary judgment is appropriate when "the pleadings, depositions, answers to
7  interrogatories, and admissions on file, together with affidavits, if any, show that there is no
8  genuine issue as to any material fact and that the moving party is entitled to summary
9  judgment as a matter of law." Fed. R. Civ. P. 56(c).  Thus, summary judgment is mandated,
10 "...against a party who fails to make a showing sufficient to establish the existence of an
11 element essential to that party's case, and on which that party will bear the burden of proof
12 at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

13     Initially, the movant bears the burden of pointing out to the Court the basis for the
14 motion and the elements of the causes of action upon which the non-movant will be unable
15 to establish a genuine issue of material fact.  *Id*. at 323.  The burden then shifts to the
16 non-movant to establish the existence of material fact.  *Id*.  The non-movant "must do more
17 than simply show that there is some metaphysical doubt as to the material facts" by
18 "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'"
19 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting
20 Fed. R. Civ. P. 56(e)).  A dispute about a fact is "genuine" if the evidence is such that a
21 reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby,*
22 *Inc.*, 477 U.S. 242, 248 (1986).  The non-movant's bare assertions, standing alone, are
23 insufficient to create a material issue of fact and defeat a motion for summary judgment.  *Id*.
24 at 247-48.  However, in the summary judgment context, the Court construes all disputed facts
25 in the light most favorable to the non-moving party.  *Ellison v. Robertson*, 357 F.3d 1072,
26 1075 (9th Cir. 2004).

27
28

### A.     Disparate Treatment

Failure to Exhaust Administrative Remedies

Title VII of the Civil Rights Act of 1964 is the exclusive remedy available to federal employees, like Plaintiff, for allegations of race and/or gender discrimination. *White v. Gen. Servs. Admin.*, 652 F.2d 913, 916-17 (9th Cir. 1981). And before a plaintiff can bring a Title VII claim in district court, the plaintiff must first exhaust her administrative remedies. *Sommatino v. U.S.*, 255 F.3d 704, 707 (9th Cir. 2001). Whether Plaintiff has exhausted her administrative remedies is a question of law. *Vinieratos v. U.S.*, 939 F.2d 762, 768 (9th Cir. 1991).

Under the Title VII statutory and regulatory scheme, a federal employee must notify an EEO counselor within 45 days of any allegedly discriminatory conduct. *Sommatino*, 255 F.3d at 708; 29 C.F.R. §1614.105(a)(1).[4] Then, if the counselor does not resolve the matter, the employee can submit a formal administrative complaint. *Id.* at 708.

Failure to timely contact an EEO counselor is fatal to a discrimination claim. *Cherosky v. Henderson*, 330 F.3d 1243, 1245 (9th Cir. 2003).[5] Failure to timely contact a

---

[4]EEO counselors play an important part in the Title VII regulatory scheme because they "have a measure of expertise and familiarity with employment disputes that federal judges cannot readily match." *Sommatino v. U.S.*, 255 F.3d 704, 710 (9th Cir. 2001).

[5]The regulation allows for tolling of the 45-day time limit if an employee shows that:

> [S]he was not notified of the time limits and was not otherwise aware of them, that . . . she did not know and reasonably should not have been known that the discriminatory matter . . . occurred, that despite due diligence . . . she was prevented by circumstances beyond . . . her control from contacting the counselor, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. 1614.105(a)(2). Plaintiff has not argued in her response to the Motion for Summary Judgment that the 45-day limit should be tolled, nor does the record reveal any

1   counselor is not excused under a continuing violation theory. *Id.* at 1246 (citing *Nat'l R.R.*

2   *Passenger Corp. v. Morgan*, 536 U.S.101, 122, 122 S.Ct. 2061 (2002)).  Discrimination

3   claims based on discrete acts are timely only if such acts occurred within the 45-day

4   limitations period for contacting a counselor.  *Henderson*, 330 F.3d at 1246.  Claims based

5   on hostile environment are timely only if at least one act occurred during the limitations

6   period.  *Id.*

7       Plaintiff alleges that she contacted an EEO counselor on August 29, 2005.  (Doc. #1

8   ¶3.10).  But she has not come forward at the summary judgment stage with any evidence to

9   substantiate that claim.  Even if she had verified that date, she has not alleged why she

10  contacted the counselor, nor what they discussed.  The Court cannot assume the purpose for

11  her call.

12      The pertinent date for the purposes of this Motion, therefore, is January 26, 2006.

13  The EEO's investigative file indicates that Plaintiff first contacted EEO Counselor Angelia

14  Doyle on that date.  (Doc. #46 Ex. A at pp. 11 & 14).[6]  The Court must use that date to

15  determine whether Plaintiff timely contacted an EEO counselor regarding the discriminatory

16  acts alleged in the Complaint.  *See Lyons v. England*, 307 F.3d 1092, 1108 (9th Cir. 2002)(To

17  determine whether an employee timely contacted an EEO counselor as required by the

18  regulation, a court "simply count[s] backward 45 days from [an employee's] initial contact

19  with the EEO counselor.").

20

21      Plaintiff alleges that Defendant discriminated against her by denying her a promotion

22  for which she applied on December 28, 2004.  The date alleged by Plaintiff is over a year

23  before she contacted the EEO counselor.  Because she did not timely contact the EEO

24  counselor regarding this promotion denial, she cannot pursue a Title VII claim based on the

25  _____

26  basis for tolling.

27      [6]The January 26, 2006 date is the only date supported by record evidence.

28                                      - 7 -

1  denial.  *Henderson*, 330 F.3d at 1245.

2       Plaintiff alleges she was denied another promotion, for which she applied on February

3  8, 2005, because she was an African American woman.  Plaintiff learned that she did not

4  receive the promotion on June 27, 2005.  Because that allegedly discriminatory act occurred

5  outside of the 45-day time limitation, Plaintiff did not comply with federal regulations and

6  did not exhaust her administrative remedies.  She therefore cannot pursue a claim in this

7  Court based on the denial.  *Id*.

8       Plaintiff alleges she also applied for a Grade 13 promotion in Phoenix that went non-

9  select.  (Doc. #1 ¶3.5 & Doc. #46 Ex. I, p. 51 lines 13-16).  But Plaintiff does not allege

10  when she applied for the promotion or when she learned that the position went non-select.

11  Plaintiff therefore has not demonstrated that she timely contacted an EEO counselor

12  regarding the position going non-select.  In fact, Plaintiff has testified that she never filed an

13  EEO complaint or union grievance when the IRS did not select her for a position for which

14  she applied.  (Doc. #46, Ex. I, p. 51 lines 1-5 & pp. 51-52, lines 24-2).

15       Plaintiff further complains that she was not allowed to work on a National Compliance

16  Review, a developmental project, because she was an African American woman.  (Doc. #1

17  ¶3.6 & Doc. #46 Ex. I p. 44 lines 17-24).  After clearing her calendar, Plaintiff learned on

18  about April 22, 2005  that she would not be working the review.  (Doc. #46 Ex. I p.44 lines

19  22-23).  The IRS instead reassigned the review to Brian Neff.  (Id. p. 45 lines 1-3).  Again,

20  Plaintiff did not exhaust her administrative remedies by timely contacting an EEO counselor

21  regarding this project.  Plaintiff therefore cannot pursue a Title VII claim based on her

22  inability to work on the project.

23

24       Also on April 22, 2005, Plaintiff's supervisor, Shirley Snider, told her not to open any

25  Grade 12 case work.  (Doc. #1 ¶3.7; Doc. #46 Ex. I p. 45 lines 9-24; Doc. #50-2 ¶29).  When

26  Plaintiff asked her upper level manager around that same time why she could not perform

27  Grade 12 case work, he allegedly told her that no evaluations had been completed for her,

28
                                  - 8 -

1  thereby hindering her promotability.  (Doc. #1 ¶3.7).

2      As of April 2005, Plaintiff's mid-year evaluation was late.  (Doc. #1 ¶3.7).  Plaintiff
3  alleges her supervisor intentionally delayed Plaintiff's evaluation in order to prevent
4  promotion.  (Doc. #1 ¶3.7).  Plaintiff knew that her mid-year evaluation was late in April of
5  2005 and believed that her supervisor was delaying the evaluation to prevent Plaintiff's
6  promotion.  Plaintiff therefore should have contacted an EEO counselor within 45 days of
7  learning that her lack of an evaluation was negatively impacting her promotability.  Because
8  she has not demonstrated she timely contacted an EEO counselor regarding the late mid-year
9  evaluation, Plaintiff cannot base a Title VII claim on the lateness of her mid-year evaluation.[7]

10     Plaintiff alleges she applied for another Grade 13 promotion on July 8, 2005.  (Doc.
11  #1 ¶3.8).  The vacancy announcement went non-select.  (Doc. #1 ¶3.8).  Plaintiff believes
12  that although qualified, she did not receive the promotion because she was an African
13  American woman.  (Doc. #1 ¶3.8).  Plaintiff has again failed to demonstrate that she
14  contacted an EEO counselor within 45 days of January 26, 2006 regarding her non-selection
15  for this promotion.

16     Plaintiff received her mid-year evaluation on August 26, 2005.  (Doc. #1 ¶3.9; Doc.
17  #46 ¶5).  Her mid-year score was a failing rate of 2.2.  (Doc. #1 ¶3.9; Doc. #46 ¶5).  Plaintiff
18  claims that she did not receive support and counseling after the poor rating because of her
19  race and/or gender.  (Doc. #1 ¶3.9).  Plaintiff should have contacted an EEO counselor
20  regarding the IRS's failure to provide support and counseling after receiving her mid-year
21  evaluation.  Even if Plaintiff had contacted an EEO counselor, the Court cannot say that
22  failure to support or counsel is an "adverse employment action," as required for a prima facie
23

24

25

26     [7]As the Court will discuss later, Plaintiff cannot proceed here on a claim regarding her
27  mid-year evaluation for an additional reason – because she pursued a union grievance
    regarding her evaluations.

28

1  case for a disparate treatment claim.[8]

2      Union Grievance

3      Congress enacted the Federal Labor-Management Relations Act (the "FLMRA"), 5

4  U.S.C. §§ 7101-35, in 1978.  *Vinieratos*, 939 F.2d at 768.  The FLMRA governs the method

5  by which a federal employee with exclusive union representation can challenge an adverse

6  personnel decision by his or her government employer.  *Id.* (internal citations omitted).

7  Under the terms of the FLMRA, a federal employee who alleges discrimination "must elect

8  to pursue his claim under either a statutory procedure or a union-assisted negotiated

9  grievance procedure; he cannot pursue both avenues, and his election is irrevocable."  *Id.*

10     Plaintiff filed a union grievance on February 16, 2006.  (Doc. #46 Ex. D).  The

11  grievance form contains the following statement of violation:

13              Annual Appraisal received on 01-27-06 was based on an
                untimely evaluation of the employee's work.  It was not made
14              in a fair and objective manner, using improper case sampling.
                Annual Appraisal was not discussed with the employee upon
15              delivery to the employee. Mitigating factors were not taken into
                consideration.  Performance monitoring and/or counseling the
16              employee were either untimely or nonexistent. Race and/or sex
                may have been a negative factor in this case.  Employee was
17              improperly removed from Flexi based on flawed evaluation
                noted above.

18  (Doc. #46 Ex. D, p. 2).

19     The EEO's investigative file indicates that Plaintiff was pursuing complaints about

20  her evaluation and appraisals through the union grievance process, not through the EEO

21  Complaint.  (Doc. #46 Ex. A, p. 3)("Complainant filed a grievance with the union regarding

22  her evaluation and appraisals.  Although she said that she was not pursuing this issue with

23  the EEO process, she submitted copies of evaluations. . . Complainant was pursuing the

25      [8]To state a prima facie case for disparate treatment, Plaintiff must demonstrate: "(1)
26  she belongs to a protected class, . . . (3) she suffered an adverse employment decision . . . ."
    *Bergene v. Salt River Project Agric. Improvement and Power Dist.*, 272 F.3d 1136, 1140-41
27  (9th Cir. 2001).

28                                    - 10 -

evaluations and appraisals issue through the Local Union grievance process."). Plaintiff herself has asserted that she "was not pursuing [her] annual evaluation with the EEO." (Doc. #46 Ex. H). Moreover, the grievance form by its terms covers Defendant's alleged failure to mentor or counsel Plaintiff.

Because Plaintiff chose to pursue her issues with the IRS's handling of her annual evaluation through a union-assisted grievance procedure, she cannot proceed on claims regarding the annual evaluation and lack of counseling associated therewith in this Court. *See Vinieratos*, 939 F.2d at 768 (stating that once an employee makes an irrevocable decision to pursue a claim through the grievance process by filing a grievance complaint, the employee cannot pursue that claim under the statutory procedure). Further, because the annual evaluation was based on her mid-year evaluation and because the EEO file makes clear that her evaluations and appraisals were not being investigated by the EEO, Plaintiff cannot pursue claims regarding the mid-year evaluation with the Court.[9]

Settlement Agreement

Plaintiff complains that her union representative could not attend the meeting regarding her disciplinary issues. (Doc. #1 ¶3.11). She also claims that the IRS unjustifiably gave her a proposal letter for a three-day suspension because she is an African American woman and because she had asserted her rights under Title VII and her union contract. (Doc. #1 ¶3.16).

Plaintiff entered into a Settlement Agreement on November 20, 2006 to resolve her disciplinary issues. (Doc. #46 ¶11). The Settlement Agreement recites that on March 16, 2006, the IRS proposed to suspend Plaintiff from duty and pay for a period of three days.

_____

[9]The Court already has held that Plaintiff has not proven that she timely contacted an EEO counselor when she knew her evaluation was late or after she received her evaluation. Plaintiff's choice to pursue her evaluation and appraisal issues through a grievance procedure is therefore an additional or alternative reason why any claims regarding the mid-year evaluation fail here.

1   (Doc. #46 Ex. G).  Pursuant to the Settlement Agreement, Plaintiff admitted that she had

2   misrepresented time spent on CBRS.  (Id.).  In turn, rather than suspend Plaintiff, the IRS

3   agreed to give Plaintiff and Plaintiff agreed to accept a Letter of Reprimand for the

4   misrepresentation of CBRS time.  (Id.).  Under the terms of the Settlement Agreement,

5   Plaintiff agreed to waive her right to pursue an EEO complaint, a grievance, or complaint or

6   appeal rights in any forum regarding the CBRS misrepresentation disciplinary issue.  (Id.).

7          An employee can waive her right to sue for discrimination by entering into a valid

8   settlement agreement with her employer.  *Pardi v. Kaiser Found. Hosp.*, 389 F.3d 840, 848

9   (9th Cir. 2004).  Plaintiff has not alleged that her Settlement Agreement with the IRS is

10  invalid because of fraud, duress, lack of consent, or for any other reason.  Plaintiff therefore

11  waived her right to sue the IRS in this Court concerning the proposed suspension, discipline

12  discussion, and ultimate discipline – the Letter of Reprimand – for her misrepresentation of

13  CBRS time.

14         The Court has held that all of Plaintiff's claims for disparate treatment fail as a matter

15  of law because either: 1) she has failed to prove she exhausted her administrative remedies

16  by contacting an EEO counselor within 45 days of the allegedly discriminatory incident; 2)

17  she opted to pursue her claim through the union-assisted grievance procedure; or 3) she

18  settled the issue giving rise to her current claim.  All of Plaintiff's claims for disparate

19  treatment arising from adverse employment actions occurring after the August 2005 review

20  of her cases fail for an additional reason.

21         Plaintiff has not offered any direct evidence of racial or gender discrimination.  The

22  Court therefore applies the *McDonnell Douglas* burden-shifting framework.  *Vasquez v.*

23  *County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2004).  Under that framework, Plaintiff

24  bears the initial burden of making a prima facie case of discrimination by showing: "(1) she

25  belongs to a protected class, (2) *she was performing according to her employer's legitimate*

26  *expectations*, (3) she suffered an adverse employment action, and (4) other employees with

27  qualifications similar to her own were treated more favorably."  *Bergene v. Salt River Project*

28

1    *Agric. Improvement and Power Dist.*, 272 F.3d 1136, 1140 (9th Cir. 2001)(emphasis added).

2        Plaintiff has not met her prima facie burden because, at least after the August 2005

3    review, she has not shown that she was performing according to the IRS's legitimate

4    expectations.  She has admitted that she misrepresented the amount of time she spent on the

5    CBRS system.  An employer's legitimate expectations demand honesty at the very least.

6    Any disparate treatment claims for discriminatory acts allegedly occurring after the August

7    2005 case review therefore additionally fail for lack of a prima facie case.

8        For all the reasons enumerated above, the Court will grant summary judgment to

9    Defendant on Plaintiff's disparate treatment claims.

10       **B.    Retaliation**

11       In her Complaint, Plaintiff broadly alleges that she was engaged in protected activity,

12   "namely complaining about her poor treatment and violations of her rights under Title VII

13   and her union contract," which allegedly led to Defendant treating her adversely, giving her

14   poor reviews, not promoting her, and generally not treating her well.  (Doc. #1 ¶¶5-5.2).  The

15   only specific allegations regarding retaliation are found in paragraphs 3.12 ("Plaintiffs [sic]

16   reviews where [sic] delayed because she asserted her rights under Title VII and her union

17   contract"), 3.14 ("Plaintiff was again given an annual evaluation with a score of 2.0.  The

18   score was substantial [sic] low because she is an african american [sic] woman and she

19   asserted her rights under Title VII and her union contract"), and 3.16 ("The suspension was

20   due to the fact that Plaintiff is an african american [sic] woman and she asserted her rights

21   under Title VII and her union contract") of the Complaint.

22       Plaintiff's claims for retaliation fail for the reasons previously outlined in this Order.

23   Plaintiff chose to pursue her claims regarding the annual evaluation and the mid-year

24   evaluation on which the annual evaluation was based through the union grievance process.

25   Plaintiff must pick either the grievance process or the statutory process; she cannot pursue

26   both.  Further, even if the grievance procedure did not resolve the late mid-year evaluation

27   issue, Plaintiff has not demonstrated that she timely contacted an EEO Counselor regarding

28

1   the evaluation after she realized it was late.  She therefore cannot maintain a retaliation claim

2   in this Court based on her poor reviews and evaluations.

3        Plaintiff also has not proven that she timely contacted an EEO counselor regarding

4   Defendant's decision not to promote her.  Plaintiff's failure to exhaust her administrative

5   remedies regarding the promotions bars her from litigating those claims here.

6        Finally, Plaintiff's retaliation claim regarding the threatened suspension must fail.

7   Plaintiff and Defendant validly settled the issue of Plaintiff's discipline for misrepresenting

8   time.  Both the threatened suspension and the ultimate discipline, the Letter of Reprimand,

9   fall under that settlement.

10       The Court therefore will grant summary judgment to Defendant on Plaintiff's

11  retaliation claims.

12       **C.   Sexual Harassment**

13       In addition to her disparate treatment claims, Plaintiff claims that Defendant subjected

14  her to a hostile work environment.  Title VII's general prohibition against discrimination

15  extends to harassment claims.  *See, e.g., Faragher v. City of Boca Raton*, 524 U.S. 775, 786

16  (1998); *Manatt v. Bank of America*, 339 F.3d 792, 798 (9th Cir. 2003); *Fuller v. City of*

17  *Oakland, California*, 47 F.3d 1522, 1527 (9th Cir. 1995).

18       To prevail on a hostile workplace claim based on either race or sex, a plaintiff must

19  show: "(1) that he was subjected to verbal or physical conduct of a racial or sexual nature;

20  (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or

21  pervasive to alter the conditions of the plaintiff's employment and create an abusive work

22  environment."  *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998). The work

23  environment must be both subjectively and objectively perceived as abusive. *Fuller*, 47 F.3d

24  at 1527.  "Whether the workplace is objectively hostile must be determined from the

25  perspective of a reasonable person with the same fundamental characteristics."  *Id*.  In

26  determining whether a work environment is sufficiently hostile or abusive to support a claim,

27  the Court should look at all the circumstances; including, the frequency of the discriminatory

28                                          - 14 -

conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating; and whether the conduct unreasonably interferes with employee's work performance. *Faragher*, 524 U.S. at 787-88.

Even viewing the evidence in the light most favorable to Plaintiff, the Court finds as a matter of law that Plaintiff has not made a prima facie case for a hostile work environment. She has not alleged that she was subjected to any verbal or physical conduct of a racial or sexual nature, let alone sufficiently severe conduct. Plaintiff has not alleged that any of her supervisors or co-workers made any racist or sexist jokes, comments, or gestures in her presence. Even if true, Plaintiff's allegations regarding failure to promote or train, an unwarranted review, and negative evaluations would not create an objectively hostile environment. Plaintiff simply has not presented any evidence of a hostile work environment. The Court therefore will grant summary judgment to Defendant on Plaintiff's hostile work environment claim.

**D.     Conclusion**

The Court finds that none of Plaintiff's claims for discrimination under Title VII can survive Defendant's Motion for Summary Judgment.

Accordingly,

IT IS ORDERED GRANTING Defendant's Motion for Summary Judgment (Doc. #45).

IT IS FURTHER ORDERED that the Clerk shall enter Judgment for Defendant.

DATED this 11th day of May, 2009.

_____
James A. Teilborg
United States District Judge